Woodward *v.* Woodward.

---

EMILY WOODWARD

*v.*

ROBERT WOODWARD and others.

1. Where the testator, by the charge upon his real estate, only intended to secure the payment of the interest on certain legacies as it should become due, and that of the principal also, if it should become payable, *Held*, that if the payments of interest had been prompt, and the security had continued unimpaired, there would, if it (the security) appeared to be in no danger of impairment, be no propriety in requiring the amount of the legacies to be raised and invested elsewhere.

2. But where part of the interest for three years is unpaid, and one of the devisees of the land charged has also lost possession of part of

the farm devised to him, and the rest of the property devised to him has either been conveyed away or is encumbered to such an extent that a sale thereof cannot be avoided, the legatees are entitled to the aid of this court.

3. The arrears of interest on the legacies, and the principal thereof ordered to be raised, and the latter, when raised, to be invested under the direction of this court, to the end that the legatees may receive the benefit thereof intended to be secured by the will; and that the subsequent lien-holders upon the premises to be sold to raise such money, may be protected in any rights they may have to the principal, should the legatees die without issue, in which case the principal of the legacies would not be payable.

4. Where the legatee released part of the property charged with the legacy, without actual notice of other subsequent encumbrances existing thereon, no equity arises against her from the release in favor of such encumbrances.

5. Where three farms and certain woodlands were chargeable with two legacies, and the legatee E. released one farm, *Held*, that such released farm must bear its due proportion of the legacy to M., and that the remaining two farms and the woodlands must bear the whole of E.'s legacy, and so much of M.'s as was not borne by such released farm, all to be estimated according to their respective values at the testator's death.

6. The general rate of interest having been changed by law, the legatees in this case held to be entitled to receive interest on the legacies, at the rate which they could have obtained had the legacies been raised and invested.

Bill for relief. On final hearing on bill, answer of Robert Woodward and answer of executor of Black, and proofs.

*Mr. B. Gummere* and *Mr. W. H. Vredenburgh*, for complainant.

*Mr. Joel Parker*, for Robert Woodward.

THE CHANCELLOR.

Robert Woodward, deceased, late of the county of Ocean, by his will, (which is dated June 18th, 1857, and was proved March 6th, 1861,) after directing that his debts and funeral

Woodward *v.* Woodward.

expenses be paid, and giving to his wife the interest of $5,000 a year for life, in lieu of her dower, bequeathed as follows :

" I give and bequeath unto my daughter, Emily Woodward, the sum of $10,000, to be paid in the following manner, that is to say : The interest of $5,000 of the said sum to be paid yearly and every year during the natural life of her mother ; but in case my said daughter marries, I order $1,000 of the principal be paid to her, and the interest of $4,000 only, annually, during the natural life of her mother ; but after the decease of her mother, I order that the interest of $10,000, or so much of the principal as remains unpaid, be paid to her yearly and every year during her natural life ; and in case of her death, she leaving lawful issue, after the death of her mother, I do order said $10,000, or so much of it as remains unpaid, to be paid to her heir or heirs, in equal proportions, share and share alike ; but in case of the death of my said daughter, leaving no lawful issue, I order, then, that said legacy, or so much of it as remains unpaid, to revert back to my estate, and my residuary legatees be forever exempt from paying the same. .

" I give and bequeath to my granddaughter, Mary B. Woodward, daughter of my son Joseph Woodward, deceased, the sum of $4,000, to be paid to her in the following manner, that is to say : When she arrives at the age of eighteen years she shall receive the interest, yearly and every year, during her natural life, on said legacy ; but in case of her death, leaving lawful issue, I order the said $4,000 to be paid to her heirs, in equal proportions, share and share alike ; but in case of her death, leaving no lawful issue, I order that the said legacy revert back to my estate, and my residuary legatees be forever exempt from paying the same."

He specifically devised to each of his sons, Edward and Robert, a farm in fee simple, and gave to them all the residue of his property, in equal shares, and ordered and directed them to pay the legacies given by his will, and charged his real estate with the payment thereof. He appointed them executors of his will, and it was proved by them. On the 16th of May, 1868, Robert mortgaged the farm specifically devised to him, to the executor of Job L. Black, deceased, to secure the payment of $4,500 and interest.

The testator was the owner, at the time of his death, of another farm in addition to those specifically devised,

and certain woodland, called in the pleadings his "outlands." On the 5th of April, 1869, Robert conveyed his interest in the last mentioned farm to his brother Edward. The widow of the testator and the testator's daughter Emily, the complainant, by deed of the same date, released that property to Edward, at the request of him and Robert. Subsequently thereto, Robert gave two other mortgages, one to William W. Bullock, and the other to Barney Reybold, upon the farm specifically devised to him. And Edward gave two mortgages on the farm devised to him and Robert by the residuary clause of the will. Seven judgments have been recovered against Robert alone, and two against him and Edward, and one against Edward alone, which are said to be liens on the property devised to them, or some part thereof. On proceedings for foreclosure and sale, instituted in this court, upon the Bullock mortgage, the premises thereby mortgaged were sold to Anthony Bullock, by whom they were conveyed to James M. Bean. The sale, however, was set aside, but Bean remained in possession of the property at the time of filing the bill in this cause.

This suit is brought by Emily Woodward, to obtain payment of the arrears of interest due her upon her legacy, and also to obtain a decree establishing the proportions in which the unreleased land shall bear the charge of the legacy, and directing the sale thereof to raise and pay the amount of the legacy. After the death of the testator, it was agreed between Robert and Edward that they should each pay one-half of the interest of the legacies as it should become due, and one-half of the principal, if it should become payable. Edward accordingly paid one-half of the interest, up to the 1st of April, 1876, and Robert paid his half of the interest due to the complainant, up to April 1st, 1873. Neither he, nor any one holding under him, has paid anything to her on that account since that date. No part of the principal has been paid. None of it has become due, for the complainant has not married. Her mother died August 11th, 1873. It does not appear whether Robert has paid any

Woodward *v.* Woodward.

interest to Mary. There is no evidence on the subject. There is no personal estate of the testator out of which the legacies, or either of them, can be raised. The testator's debts have all been paid. Mary is past eighteen years of age, and is unmarried. The testator manifestly did not contemplate the investment, by his two sons, of the legacies in question. He intended to secure the payment of the interest as it should become due, (and of the principal, also, if it should become payable,) by the charge upon his real estate. Should the legatees not marry, no part of the principal would ever be payable. Should the complainant marry, $1,000 of the principal would be payable to her, and, at her death, the rest of it would be payable to her children, should she leave any, but otherwise it would not be payable. Should Mary marry and leave children, the amount of her legacy would be payable to them, but otherwise it would never be payable.

Had the payments of interest been promptly met, and the security continued unimpaired and apparently in no danger of impairment, there would be no propriety in requiring the sons to raise and invest elsewhere the amount of the legacies; but the interest is in arrear, and Robert has become so much embarrassed in his pecuniary affairs that he has not only failed to pay interest to the complainant (and perhaps to Mary, also,) for the last three years, but he has lost possession of the farm specifically devised to him, and the rest of the property devised to him has either been conveyed away or is encumbered to such an extent that, as it appears by his answer, a sale thereof cannot be avoided. Under such circumstances, the complainant is entitled to the aid of this court to raise the amount of the legacy out of the property on which it is charged, and to cause it to be invested. The arrears of interest on the legacies, and the principal thereof, will be ordered to be raised, and the latter, when raised, will be invested under the direction of this court, to the end that the legatees may receive the benefit thereof intended to be

secured to them by the will; and the holders of subsequent liens upon the premises which are to be sold to raise the money, may be protected in any rights they may have to the principal in the event of the complainant and Mary dying without leaving lawful issue.

There appears to be no equity to deprive the complainant of her priority of lien upon the unreleased property devised to her brothers. It is true that when she released the farm which was devised to them by the residuary clause of the will, the Black mortgage, and perhaps the Skinner judgment (which appears by the bill to have been recovered against Robert in 1861), were in existence, but it does not appear, and it is not even alleged, that she had actual notice of either of them. Unless she had such notice, no equity arises against her in favor of these encumbrances, or either of them, from the release. *Blair* v. *Ward*, 2 *Stock.* 126; *Ward* v. *Hague*, 10 *C. E. Gr.* 397.

Mary's legacy is a lien on the three farms and the outlands. The farm devised by the residuary clause must bear its due proportion of the amount of that legacy, and of any arrears of interest thereon chargeable to Edward in respect of his ownership thereof. The complainant's legacy is a lien on only the other two farms and the outlands by which it and the balance of Mary's legacy not chargeable on the farm devised by the residuary clause are to be borne, in equitable proportions, according to their values at the time of the death of the testator. The arrears of interest chargeable on those two farms and the outlands are to be borne in like manner; Edward, of course, being credited with all payments made by him on account thereof.

The outlands should be sold before the farms specifically devised. I am not willing, especially in view of the rights of the mortgage and judgment encumbrancers, to declare, on the case as it stands, the proportions which the properties are to bear. The value of the farm specifically devised to Edward does not appear to my satisfaction. It is estimated without taking into account the improvements

Woodward *v.* Woodward.

thereon.   The value of the improvements is omitted on the ground that they were put on the property by Edward himself, at his own expense, before the death of his father.   This claim appears, however, only in the testimony, and it does not appear there in such a manner as to warrant a decree thereon.   The pleadings are silent on the subject.   Edward has not set up the claim ; indeed he has not answered.   The improvements probably constituted a considerable part of the value of the farm.

It remains to consider the question of interest on the legacies.   The legatees are entitled to receive interest at the rate which they could have obtained had the legacies been raised and invested.

Under the circumstances, they have been entitled to interest from Robert and Edward since 1866, at the rate of seven per cent. per annum.   In that year the general rate of interest in this state was changed from six to seven per cent.   On the arrears they are therefore entitled to interest at seven per cent. per annum from the time when the arrears became due.   The interest in arrear may be regarded as having been in the hands of the executors from the time when it became due, and they will be presumed to have used it in their business during the time they have withheld it.   Whether the interest on the legacies began to run from the death of the testator or not, it is not necessary to decide.   The rule, it may be remarked, which gives to a legatee interest from the testator's death on a legacy given by the will of the parent of the legatee, or of one standing *in loco parentis*, does not apply to the case of an adult legatee.   *Hennion's executors* v. *Jacobus*, 12 *C. E. Gr.* 28.   Robert and Edward voluntarily began to pay interest at the end of the first year after the testator's death, and no claim is made in their behalf in respect to the payment of the interest for that year.   It is very probable that such payment was in exact accordance with the intentions of the testator; for neither of the legatees appears to have had any other means of support than the provision made by the will in these legacies.